J-A14019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CYNTHIA L. POLLICK | IN THE SUPERIOR COURT |
| | OF PENNSYLVANIA |
| Appellant | |
| | |
| v. | |
| | |
| ANTHONY P. TROZZOLILLO | |
| | |
| Appellee | No. 991 MDA 2021 |

Appeal from the Order Entered July 23, 2021
In the Court of Common Pleas of Lackawanna County
Civil Division at No: 20 DR 0205 2020-40119 PACSES 517300200

BEFORE:  BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:            **FILED: NOVEMBER 7, 2022**

Appellant, Cynthia Pollick, appeals *pro se* from the July 23, 2021 orders resolving the equitable distribution of the parties' marital estate, denying her claim for an award of alimony, and imposing sanctions against her.[1]  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  The trial court entered a decree in divorce on July 23, 2021, thus rendering its equitable distribution and alimony order final and appealable.  **See Busse v. Busse**, 921 A.2d 1248, 1253 n.2 (Pa. Super. 2007) (noting that orders regarding equitable distribution and alimony become final and appealable upon entry of a decree in divorce); **appeal denied**, 934 A.2d 1275 (Pa. 2007). The trial court's imposition of sanctions against Appellant (essentially an award of counsel fees to Appellee also is properly before us.  **Holz v. Holz**, 850 A.2d 751, 760-61 (Pa. Super. 2004), **appeal denied**, 871 A.2d 192 (Pa. 2005).

The parties were married on January 7, 2017. Appellee, Anthony P. Trozzolillo, commenced this action with a divorce complaint filed on December 30, 2019. Appellant filed her own complaint in divorce on January 24, 2020, followed by a spousal support complaint on March 6, 2020. Both parties are practicing attorneys in Lackawanna County. On September 21, 2020, after all judges of the Lackawanna County Court of Common Pleas recused themselves, the Lackawanna County Court Administrator assigned Judge Emanual A. Bertin (hereinafter the trial court) to preside over this case.

In this timely appeal, Appellant presents seven questions:

I.    Whether the trial court had jurisdiction while this case was on appeal to issue substantive orders?

II.    Whether the trial court erred in sanctioning a *pro se* litigant almost $27,000 for filing a divorce and attempting to gather evidence on marital assets?

III.    Whether the trial court erred when it refused to allow Appellant to engage in discovery, including the use of subpoenas to evaluate marital assets when both parties sought discovery?

IV.    Whether the trial court erred when it sealed the entire judicial record, which included even the names of documents filed?

V.    Whether the trial court erred in its equitable distribution since without investigation it found only two marital assets, which were the parties' retirement pensions and both parties owned residences along with husband owning rental properties?

VI.    Whether the trial court should have allowed Appellant to receive alimony?

VII.    Whether the trial court must hold a hearing to determine if a party is entitled to a fault divorce based on indignities?

Appellant's Brief at 14.

We have reviewed the extensive record, the applicable law, the parties' briefs, and the trial court's opinions of July 20, 2021 (the trial court issued two opinions that day—one addressing its imposition of sanctions (hereinafter the "Sanctions Opinion") and the other addressing the substantive issues (hereinafter the "Substantive Opinion")). We conclude that the trial court's opinions thoroughly and accurately address Appellants' arguments. Subject to the following observations, we reject Appellant's arguments based on the accurate recitation of facts and sound reasoning set forth in the trial court's opinions.

With her first issue, Appellant claims that the trial court lacked jurisdiction during much of the underlying proceedings because this matter was pending on appeal before this court and/or awaiting our Supreme Court's disposition of a petition for allowance of appeal. This argument arises from Appellant's appeals from various interlocutory orders. On December 2, 2020, the trial court entered an order expressly titled an "Interlocutory order and scheduling order for pre-trial conference in-court on the record." Order 12/2/20. Appellant nonetheless filed a notice of appeal from that order the next day. This Court granted Appellee's application to quash by order of

January 7, 2021 (1537 MDA 2020). On February 12, 2021,[2] the trial court entered four interlocutory orders addressing scheduling and other ministerial matters. Appellant appealed from these orders on February 17, 2021, and this Court granted Appellee's application to quash by order of March 22, 2021 (239 MDA 2021).

Rule 1701 of the Pennsylvania Rules of Appellate Procedure governs the affect of an appeal:

> **(b) Authority of a trial court or other government unit after appeal.**--After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:
>
> **[…]**
>
> (6) Proceed further in any matter in which a non-appealable interlocutory order has been entered, **notwithstanding the filing of a notice of appeal** or a petition for review of the order.

Pa.R.A.P. 1701(b)(6) (emphasis added). Pursuant to Rule 1701(b)(6), the trial court had jurisdiction to proceed notwithstanding Appellant's appeal from orders that were plainly not final or appealable. For this reason, and for the reason explained on pages 23-28 of the trial court's Substantive Opinion, Appellant's first argument lacks merit.

---

[2] The four orders in question were docketed on February 12, 2021. The trial court dated them February 11, 2021, and the time stamps on the original documents indicate that they were filed on February 11, 2021.

- 4 -

Appellant's second argument challenges the trial court's order of $26,950.00 in sanctions pursuant to 42 Pa.C.S.A. § 2503(7) and (9).[3] We review to determine whether the trial court abused its discretion. *Miller v. Nelson*, 768 A.2d 858, 861-62 (Pa. Super. 2001), *appeal denied*, 782 A.2d 547 (Pa. 2001). Where the record supports the trial court's finding that the conduct of the sanctioned party was obdurate or vexatious, we will not disturb the trial court's award. *In re Padezanin*, 937 A.2d 475, 483-84 (Pa. Super. 2007).

The amount of the sanctions award is based on testimony from Appellee's counsel, deemed credible by the trial court, to the effect that Appellant's dilatory, obdurate, and vexatious conduct considerably increased

_____

[3] That section provides:

> **§ 2503. Right of participants to receive counsel fees**
>
> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> [...]
>
> (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.
>
> [...]
>
> (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

42 Pa.C.S.A. § 2503(7), (9).

Appellee's counsel fees. In addition to the two frivolous appeals mentioned above, Appellant filed dozens of subpoenas demanding that Appellee produce items with no obvious relevance to this proceeding. Also, Appellant consistently failed to produce tax records and other documentation pertinent to an equitable distribution. We discern no abuse of discretion in the trial court's award, and we affirm the imposition of sanctions on the basis of the Sanctions Opinion. In addition, the trial court references numerous instances of Appellant's misconduct on pages 22 through 33 of the Substantive Opinion.

Appellant's third argument—regarding the trial court's denial of various discovery requests—lacks merit. Appellant correctly notes that Pa.R.C.P. 1930.5(b) provides for discovery without leave of court in alimony and equitable distribution proceedings. But Appellant's argument ignores her own consistent failure to provide pertinent discovery, as referenced on pages 4-5, 8-10, 15-18, and 31-33 of the Substantive Opinion. Appellant further ignores the detailed list of subpoenas that she served on Appellee—which the trial court quashed at Appellee's request—as set forth on pages 4-8 of the trial court's Sanctions Opinion. The trial court described Appellant's conduct as "outrageous" and "disrespectful of, and to, the court system." Sanctions Opinion, 7/20/21, at 2. Likewise, the court wrote in a section of its Substantive Opinion titled "Wife's Abusive Discovery Requests" that "Wife's outrageous discovery requests were meant to harass Husband and to run up his legal fees, with which she was successful." Substantive Opinion, 7/20/21,

at 30. Appellant's third argument lacks merit for the reasons explained in the portions of the Sanctions and Substantive Opinions referenced above.

Appellant's fourth argument challenges the trial court's decision to seal the record in this matter. She cites no law to support her argument as to why the trial court should not have sealed the record in this case, in violation of Pa.R.A.P. 2119(b). She has therefore waived this argument. *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa. Super. 2002). At any rate, Rule 223 of the Pennsylvania Rules of Civil Procedure permits a trial court to exclude the public from civil proceedings in the interest of "public good, order or morals." Pa.R.C.P. 223(4). This Court has held that divorce proceedings can be closed, pursuant to Rule 223(4) for good cause. *Katz v. Katz*, 514 A.2d 1374 (Pa. Super. 1986), *appeal denied*, 527 A.2d 542 (Pa. 1987). The findings in the Sanctions Opinion establish that Appellant repeatedly attached Appellee's private financial information to her filings without attaching a confidential information form, per the Public Access Policy of the Unified Judicial System, thus making that information a matter of public record. Sanctions Opinion, 7/20/21, at 4-5. We discern no error in the trial court's decision to seal the record.

Appellant's fifth argument challenges the trial court's valuation of the marital estate for purposes of equitable distribution.

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by

a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017). The trial court analyzed the factors set forth in 23 Pa.C.S.A. § 3502(a) at pages three through 13 of the Substantive Opinion, and explains its conclusion at pages 16 through 20. We reject Appellant's argument for the reasons given in the Substantive Opinion.

Next, Appellant argues the trial court erred in denying her an award of alimony.

Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that [t]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony "is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, [a]limony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable

- 8 -

distribution award and development of an appropriate employable skill.

*Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004) (quotation marks omitted).

The trial court described Appellant's alimony claim as a "sham." Substantive Opinion, 7/20/21, at 20. She earns six figures, has no children, and greater future earning capacity than Appellee. *Id.* Further, Appellant failed to document her needs by providing a list of expenses. *Id.* at 15, 20. The trial court thoroughly and accurately addresses the factors set forth under 23 Pa.C.S.A. § 3701 at pages 14-16 of the Substantive Opinion, and explains its conclusion on pages 20-21. We reject Appellant's argument for the reasons explained in the trial court's Substantive Opinion.

Finally, Appellant claims the trial court erred in not holding a hearing to address her allegation that a fault-based divorce was warranted because of indignities. The trial court did not address this argument. Indignities can be grounds for a fault-based divorce under 23 Pa.C.S.A. § 3301(a)(6). We observe, however, that Appellant fails to support her argument with citation to pertinent authority, resulting in waiver. Pa.R.A.P. 2119(b); *Estate of Haiko*. Furthermore, Appellant's second amended complaint in divorce included claims for a no-fault divorce under § 3301(c) and (d) (mutual consent and irretrievable breakdown, respectively). Appellant's Second Amended Complaint in Divorce, 2/7/20, at Count I, ¶¶ 12-17. That being the case, § 3301(e) provides as follows:

**(e) No hearing required in certain cases.--**If grounds for divorce alleged in the complaint or counterclaim are established under subsection (c) or (d), the court shall grant a divorce without requiring a hearing on any other grounds.

23 Pa.C.S.A. § 3301(e).  The trial court found an irretrievable breakdown and therefore granted a divorce without requiring a hearing on indignities, exactly in accord with § 3301(e).

For the foregoing reasons, and those expressed in the trial court's Substantive and Sanctions Opinions, we affirm the order.  We direct that a copy of the trial court's July 20, 2021 opinions, titled "Memorandum Opinion Re:  Equitable Distribution and Alimony, Issued Simultaneously With Divorce Decree", and "Memorandum Opinion and Order Re:  Husband's Omnibus Petition For Sanctions Pursuant to 42 Pa.C.S.A. § 2503(7) and (9)" be filed along with this memorandum.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/07/2022

- 10 -

| | | |
|---|---|---|
| CYNTHIA POLLICK | : | IN THE COURT OF COMMON |
| | : | |
| | : | COUNTY |
| | : | |
| v. | : | 20 FC 40119 |
| | : | |
| ANTHONY TROZZOLILLO | : | CIVIL ACTION-LAW. |
| | : | DIVORCE |
| | : | |

## MEMORANDUM OPINION RE: EQUITABLE DISTRIBUTION AND ALIMONY, ISSUED SIMULTANEOUSLY WITH DIVORCE DECREE

July 20, 2021                                       BERTIN, S. J.
                                                    Appointed Visiting Judge

### I.      INTRODUCTION

Pursuant to Pa. R. J. A. 701(c)(2), as a result of the full bench recusal of the Lackawanna County bench, and upon recommendation of the Court Administrator of Pennsylvania, the Chief Justice of Pennsylvania appointed the undersigned, a Senior Judge from the Court of Common Pleas of Montgomery County, Pennsylvania, to "try all proceedings," with respect to the family court cases docketed at 20 FC 40119 and 20 CR DR 00205. Wife has withdrawn her 20 DR 00205 family court case (request for alimony pendente lite), and the undersigned has dismissed it, so that claim is closed. Remaining is the 2020 FC 40119 family court case, the divorce case, in which Wife has raised claims for equitable distribution of marital property and alimony.

On June 3, 2021, the Court conducted what is known as an equitable distribution hearing (an E.D. hearing), in which the Court fully addressed Wife's claims for equitable distribution and alimony. '

1.

## II.  HOLDING

### 1.  Equitable Distribution of Marital Property

(i)Wife shall retain the premarital value of her deferred income plan (SEPA), as her separate property, and Husband is DENIED any claim to the marital value portion of Wife's SEPA that increased in value after the marriage, and (ii) Wife is DENIED any claim to Husband's deferred income plan (401(k)), which he started on the date of marriage, and is marital property.

This was a simplistic divorce (though Wife abused the court system, with her obdurate, vexatious, and dilatory conduct, for which a separate order has been entered awarding Husband legal fees therefore under the statutory authority of 42 Pa. C.S. § 2503(7) and (9)), involving only these two modest marital assets, a portion of Wife's SEPA and Husband's 401(k).

### 2.  Alimony

Wife's claim for alimony will be DENIED.

Both parties are practicing attorneys in Lackawanna County.  Husband is 59 years old and has been practicing law in Pennsylvania for 22 years.  Wife is 50 years old and has been practicing law in Pennsylvania for over 20 years. The Court finds that the parties' earning capacities are approximately the same.  The Court finds that Wife's claim for alimony was made in bad faith and was not a sincere request.  It is clear that Wife is not "incapable of self-support through appropriate employment" (alimony factor #17).  Wife has always supported herself as a practicing attorney before and after this marriage, and throughout this short-term marriage (only 3 years and 17 days) Wife purposely kept secret from Husband her finances and earnings and insisted, in that regard, the parties file

2.

separate tax returns. **Indeed, Wife did not even present at the equitable distribution hearing, the requested expense list outlining her personal expenses and needs in support of an alimony claim.**

### III. DISCUSSION

#### 1. EQUITABLE DISTRIBUTION FACTORS (23 PA. C.S. § 3502(a)).

##### (i) The length of the marriage.

The parties married on January 7, 2017. After a March 10, 2021 hearing, the Court ordered that the parties were living separate and apart as of January 24, 2021, the date that Husband was served with the divorce Complaint. Thus, this was a short- term marriage of three (3) years and seventeen (17) days. The judicially determined separation date by the undersigned, after hearing, was a fiasco and a legal embarrassment engineered by Wife, to harass Husband and drive up his legal fees. After Wife, caused confusion with the affidavits (filed, and changed, and refiled), the Court had to hold a hearing, due to the confusion Wife had caused to determine Wife's true intent. Wife knew that the marriage was irretrievably broken and knew that the parties were living separate and apart but, ostensibly, was bent on contesting both issues of (1) irretrievably broken and (2) date of separation. Of course, at the hearing, under oath, Wife admitted the marriage was, indeed, irretrievably broken, and the separation date was clear. It was a total waste of judicial time. In fact, the Court wound up colloquing the parties on the two issues: (1) irretrievable breakdown and (2) date of separation for at least one (1) year, per statute, and they were clear on the same.

##### (ii) Any prior marriage of either party.

This is Husband's third marriage. This is Wife's first marriage.

3.

**(iii) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.**

Husband is 59 years old. He is in average health. He is a trial attorney and was when he met his Wife. He practiced in Ohio for twelve (12) years and has been practicing in Pennsylvania for twenty-two (22) years. He is presently a non-equity partner at Chartwell Law Firm receiving a salary, and a discretionary bonus.

Wife is 50 years old and will be 51 years of age on July 17, 2021. Her health is unknown because in questioning by the Court she only responded that she does not got to a doctor. She is a solo practitioner with a specialty in employment law and appears in federal and state courts frequently. She was doing this when she met Husband. She has been practicing law for over twenty (20) years.

**(iv) The contribution by one party to the education, training or increased earning power of the other party.**

None.

**(v) The opportunity for each party for future acquisitions of capital assets and income.**

None, other than their earnings as lawyers.

**(vi) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.**

**(a) The parties' income and earnings and earning capacities as practicing lawyers.**

Both parties were clear on what the Court required of them to establish the income and earnings as early as the Court's APL hearing order. The Court required full tax returns for the calendar year 2020, prior tax return, W-2's for Husband, and Schedule C's for Wife for specified years. As usual, for the equitable distributions hearing, Husband fully complied with the Court's requirement, and Wife wholly failed and refused to comply.

4.

Because Wife only produced her 2019 federal tax return and testified that it was a typical year for her, the Court used Wife's 2019 tax return (the only reliable document for Wife before the Court) and, compared it to Husband's 2019 tax return to determine the relative earnings of the parties.

### (b) Wife's 2019 Federal Income Tax Return

Wife shows .. gross receipts of $207,059, according to her Schedule C. Even though as early as the Court's APL order, the Court required receipts and back up documentation and proof of any alleged "business expenses," which totaled twenty (20) categories for which Wife took deductions from the $207,059 gross income (lines 4, 8, 9, 15,16(b), 17, 18, 20(b), 23, 24(a), 24(b) 26, 27(a) (Part V Other Expenses, totaling 8 items)), Wife brought nothing to the Court. In fact, Wife's testimony on the same was evasive and not credible. Further, as early as the Court's APL order, the Court strongly suggested to Wife that she present her accountant, who prepared the tax returns, to explain the deductions taken on the return and determine if he or she saw receipts or proof of the same or recorded them relying solely on Wife's say so. The Court explained to Wife as early as the hearing when the APL order was crafted that with self-employed taxpayers, such as she, accountants appear regularly in family court on issues such as these. Wife became argumentative about her accountant not appearing to explain the returns or having a 2020 tax return prepared and filed in time for the APL hearing.

The Court would have certainly allowed Wife's accountant to appear via video, zoom, or telephone, if Wife requested the same. She did not. There was a complete lack of testimony and explanation from Wife on the expenses, and a lack of receipts, or any paper back-up or verification. Husband, in his post-hearing brief made arguments for add-backs to Wife's income.

5.

Husband's arguments are sound, reasonable, and convincing. Of the twenty (20) deductions, Husband argues in favor of only four (4) add- backs, as follows:

1. $14,002   ---- cost of goods

2. $12,199   ---- travel

3. $4,529   ---- two deductions for dues/ subscriptions

4. $5,617   ---- CLE/ Seminars, Professional Development, Gifts, Office Refreshments and Meals

-----------------------

**TOTAL: $35,897**

When one adds-back $35,897 to $123, 098 (Wife's $121,230 net income, plus health insurance refund of $1,868), one arrives at $158,995 income, subject to tax. Wife's 2019 federal tax return shows a federal income tax of $32,334. $158,995 income, minus $32,334 total income tax, equals $126,661 net income from Wife's law practice for the year 2019.

Further, Husband testified credibly that Wife bought her mother, while mother was working for Wife, a 2019 Jeep Cherokee automobile for $36,000 to $37,000. Mother no longer works for Wife. Wife did not rebut this testimony.

### (c) Husband's 2019 Federal Income Tax Return.

Husband's tax return, because he is an employee and not an employer like Wife, and receives a W-2 form, is much easier to analyze than Wife's tax return as a sole proprietor.

Husband's income is $166,826. Husband's total income tax is $31,314. $166,826, minus $31,314 total tax, equals $135,512 net income from Husband's law practice for 2019.

### (d) Conclusion.

We have two practicing attorneys. Each has been practicing law for over twenty (20)

6.

years. Wife is 50. Husband is 59. Wife earns $158,995 and pays $32,334 in taxes, for a net income of $126, 661 per year. Husband earns $166,826 and pays $31,314 in taxes, for a net income of $135, 512 per year.

This means that Husband receives only $7,831 in gross income a year more than Wife and nets, after taxes, only $8,851 more than Wife. The amount of their income taxes is almost identical, Wife paying only $1020 more in income taxes than Husband.

Certainly, Husband can support himself on $135,512 net income, after payment of taxes, and Wife can support herself on $126,661 net income, after payment of taxes. Neither have any dependents. Husband's children are adults. Wife never had children.

After analyzing the testimony of the parties, income and employment over the years as lawyers, and the documentary evidence presented by Husband (Wife produced no documentary evidence on this important issue), the Court concludes that Husband and Wife both have six figure incomes, with no minor dependents, and have relatively the same earning capacity. The Court questioned Wife about her former years and whether there were higher years than 2019, and the Court got the impression that there were. But, as always, Wife was evasive. It is clear from her testimony, however, that she can have an extraordinary high year if she hits a big case, and with no employees, she has the potential of hitting it big. There is truth to the saying, "keep it small, keep it all."

Husband, on the other hand, is with a law firm. Therefore, the same is not true with him. He may get a small bonus, like he did in 2020 for the extra hours he billed, but nothing extraordinary. He does not have the potential Wife does. In addition, Husband is 59 and Wife is 50. Husband is, therefore, nine (9) years older than Wife. So, Wife. will be earning income for nine (9) more years than Husband. Husband does not have the amount of years to earn in the

7.

future as does Wife. The small difference in their income pale in respect to future years of working, which greatly favors Wife to the extent of 9 more years. So, going forward, Wife has a much greater ability to earn more money than Husband, When adding up the years of working, and the ability to accumulate assets from those earnings.

### (vii)    Medical, Retirement, Insurance.

These are not a present source of income to either party.

### (viii)    2020 Income Tax Returns.

Husband presented his fully completed income tax return prepared by his accountant, which Husband will be filing. Husband is credible. Wife brought nothing, as expected by the Court. Accordingly, she would not have had the 2020 tax return for the APL hearing (which she withdrew and the Court dismissed). Wife balked previously in Court prior to the APL hearing about giving a priority to preparation of the 2020 tax return so that it could be analyzed in Court and to explain the circumstances by her accountant, but she indicated to the Court that she would not. And, she did not. On the other hand, Husband testified credibly that he spoke to his accountant to put a priority on preparing the 2020 tax return in time for the hearing and followed through with that. As to Wife, Wife · failed to articulate whatsoever as to what kind of year she had in 2020, the most current full year as to income or expenses. The Court is convinced she does know this information, but refuses to be forthcoming.

It is for this, among other reasons, that Husband has requested the Court to nonsuit Wife's equitable distribution claim, as the Rules require production of the most recent full year tax return. Wife failed and refused in this regard. Of course, with Wife's alimony claim, the same thing occurred, for which Husband requests dismissal. The Rules require Wife to produce

an Expense Sheet for personal expenses showing personal needs with respect to an alimony claim. Wife failed and refused to offer an Expense list.

### (ix) Husband's Rental Property.

Husband owns real property in the northern part of Scranton. It is a "lease to own." The tenants pay Husband $775 per month rent, but Husband pays $650 per month for the mortgage, pays the sewer, and pays $300 per year for garbage, so Husband makes no profit on the rent, plus $800 per year homeowners insurance. When the mortgage is paid in full, the tenants own it.

### (x) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

Not applicable. Both are hard working attorneys.

### (xi) The value of the property set apart to each party. (Non-Marital Property).

### (a) Wife

#### i. Premarital portion of Wife's SEPA

On the date of marriage, $74,059.46. That $74,059.46 is Wife's sole and absolute premarital property, which sum is to be considered when awarding or dividing marital property.

#### ii. Cash Surrender Value of Life Insurance Policy

Wife admitted owning a whole life insurance policy. However there was confusion as to the amount of the insurance proceeds being $1 million, $908,000, or $100,000 involving her mother and her. Further, it was unclear who was the beneficiary or the insured. Wife admitted there was a cash surrender value on the policy, but had no idea how much. Wife's Exhibit 3, for "business expenses," i.e. expenses for the law

9.

practice, shows, for 2021, "$2,596.44 Life Ins." This is interesting for two reasons. First, $2,596.44 is a high premium, so the insurance proceeds would not be insignificant, nor would the cash surrender value, which if acquired during marriage would be marital property and, if not, would be Wife's sole, pre-marital property. Second, said life insurance premium payment is <u>not</u> a valid law firm business expenses, as it is purely personal, and therefore, improper.

### iii. <u>Real Estate with Ranch House on 1 ½ acres, Lackawanna County, Pa. at 11059 Valley View Drive, Clarks Summit.</u>

Wife grew up in this home, raised by her parents there. Wife lives there today with her mother, who is 82 years of age. In 1989, Wife's father died, and the home and property went to Wife's mother. In 2014, prior to Wife's marriage to Husband, Wife's mother deeded the real estate and home to Wife and Wife's sister. Presently, the home has no mortgage on it. On questioning by the Court, Wife refused to render an opinion as to the fair market value of the property and home. The Court finds, however, that Wife is the joint owner of this property and home with her sister and that it has value. It is Wife's premarital property, just as her SEPA (pension) up to date of marriage. Wife certainly should have come prepared, as an owner, to render an opinion as to value.

### iv. <u>Wife's Post Separation Contributions to her SEPA.</u>

Those amounts were not specifically identified.

### (b) <u>Husband</u>

#### i. <u>Home where Husband Resides.</u>

Husband's testimony was credible. Husband owned the home prior to this marriage. On the date of marriage, it was worth only $200,000, because of high school/real estate taxes of $8,000 to $9,000 per year, which the neighbors and

10.

neighborhood could not afford. Accordingly, the neighbors tried to sell their houses, but could not, resulting in foreclosures. As of December 2, 2020, post separation, the value was only $195,000, the same value as of the date of separation. Unfortunately, the mortgage is $185,000, so that there is <u>no equity</u> or value in the home. The value of the property went down in value since marriage.

Additionally, the condition of the property is not good, as it needs $23,000 in repairs, namely, section of fence to be replaced, section of sidewalk to be replaced, hardwood family room to be replaced, and a new roof. See Husband's Exhibit 19 ($23,000, of which $12,000 is a new roof, money that Husband credibly testified he does not have). Husband referred to undersigned's 12/2/20 Memorandum Opinion during his testimony.

### ii. <u>Rental Property in Northern Scranton.</u>

This property has no value; it is "under water." It is in Husband's name only and it is premarital property. It was worth $30,000 on date of marriage, date of separation, and today. It has a $54,893 mortgage on it. (See Husband's Exhibit 8). Therefore, there is no equity in the property.

### iii. <u>Husband's Post- Separation payments to his 401(k) Pension.</u>

Like with Wife's SEPA, those amounts were not specifically identified.

(xii) **<u>The standard of living of the parties established during the marriage.</u>**

Average.

(xiii) **<u>The economic circumstances of each party at the time of the division of property is to become effective</u>**

(a) **<u>Marital Property</u>**

11.

(i)    Wife   - SEPA (Pension)

| | | |
|---|---|---|
| Date of Marriage - | $74,059.46 | 1/1/17 |
| | $83,523.22 | 6/20/19 |
| Estimated Value - | $88,375.20 | 1/24/20 |

(Wife's Exhibit 4).

**Wife's Increase in Value (Marital Property)**
**$14,315.74**

(ii)   **Husband** – 401(k) (Pension) (Exhibit # 5)

Value on date of separation was $37,464.43, less the loan balance against the same of $7,960.55 taken out by Husband for payment of 2018 income taxes, a martial debt, for marital property value of $29,503.89.

**(b) Marital Debts**

**(i) Wife**

1. Discover Card- $1,703.08

2. Bank of America Credit Card- $514.52

3. 2019 IRS/Local Taxes-$8,947

Total: $11,164.60

**(ii) Husband**

1. 2018 Tax Debt (Exhibit 5)- $7,960.55

2. Student Loan (Son)(Citizens)(Exhibit 11) - $25,140.98

3. Advantage Aviator Credit Card(Exhibit 15) –
$16,656.01

4. Discover Credit Card (Exhibit 16a)-    $20,127.35

5. 2019 Tax Debt (Exhibit 1, line 23)-    $8,401

12.

Total: $78,285.89

As a result, for Husband, measuring marital property and marital debt, Husband has a negative net estate of $48,782.11, as of date of separation.

## (c) Non-Marital Debt

Only Husband submitted non-marital debt, which is substantial as follows:

1. Student Loan (Son)(Sallie Mae)(Exhibit 10) - $54,918.05

2. Parent Plus Loan (Daughter)- $175,000

3. Amex Credit Card(Exhibit 12)- $7,621.24

4. Bank of America Credit Card (Exhibit 13)- $9,603.73

5. Bank of America Credit Card (Exhibit 14)- $14,809.26

6. 2020 Tax Debt(Exhibit 2, line 37)- $8,806

Total: $270,758.28

## (d) Personal Property

Wife took what she wanted when she left Husband's residence on January 18, 2020, a year and one-half ago. Each party will retain what they have.

(xiv) **The Federal, State, and local tax ramifications associated with each asset to be awarded, distributed or assigned, which ramifications need not be immediate and certain.**
3)
Not applicable.

(xv) **The expenses of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.**

Not applicable.

13.

2.          **ALIMONY FACTORS**
            **(Pa. C.S. § 3701(a))**

(1) <u>The relative earnings and earning capacitys of the parties.</u>

Covered under Equitable Distribution section.

(2) <u>The ages and the physical, mental and emotional conditions of the parties.</u>

Covered under Equitable Distribution section.

(3) <u>The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.</u>

Covered under Equitable Distribution section.

(4) <u>The expectancies and inheritance of the parties.</u>

None.

(5) <u>The duration of the marriage.</u>

Covered under Equitable Distribution section.

(6) <u>The contribution by one party to the education, training or increased earning power of the other party.</u>

Covered under Equitable Distribution section.

(7) <u>The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.</u>

Not applicable. The parties have no children together.

(8) <u>The standard of living of the parties established during the marriage</u>

Covered under Equitable Distribution section.

(9) <u>The relative education of the parties and the terms necessary to acquire education or training to enable the party seeking alimony to find appropriate employment.</u>

Not applicable.

14.

**(10) The relative assets and liabilities of the parties.**

Covered under Equitable Distribution section.

**(11) The property brought into the marriage by either party.**

Covered under Equitable Distribution section.

**(12) The contribution of a spouse as homemaker.**

Covered under Equitable Distribution section. Not applicable.

**(13) The relative needs of the parties.**

Husband presented his needs in his monthly expenses list.

Wife has no needs, as she failed to testify at to any and refused to present

a rule mandated expenses list.

**(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the Court in its determinations relative to alimony except that the Court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).**

Not applicable and was not testified to by either party at the June 3, 2021

equitable distribution hearing.

**(15) The Federal, State and local tax ramifications of the alimony award.**

Not applicable.

**(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to property distributed under Chapter 35 (relating to property rights), to provided for the party's reasonable needs.**

Wife is the party seeking alimony. First, in violation of Rules, Wife failed

to present her required expense sheet to attempt to establish she has "reasonable

needs," nor did she offer any testimony thereon. She cannot, therefore, prove a

a need for alimony. Second, Wife owns a home with 1 ½ acres, in which she

15.

lives, mortgage free. Third, Wife has a retirement account (SEPA) with an estimated $88,375.20 value therein. Fourth, Wife has only a small amount of debt. Fifth, Wife has been self-supporting in the practice of law for over twenty (20) years and a "typical" year for her, according to her testimony, is her 2019 federal return, from which the Court finds she earns, and has a capacity to earn, $158, 995 per year, and after taxes, a net $126,661 per year, which certainly serves to show she has appropriate employment to be self- supporting and provide for her own needs, at age 50, especially since she has no children. Sixth, the value of her home and the cash surrender value of the large life insurances policy she owns remains a mystery, because Wife refuses to disclose this to the Court.

**(17) Whether the party seeking alimony is incapable of self- support through appropriate employment.**

No. Wife can easily support herself through appropriate employment and has for over twenty (20) years as a practicing attorney. Of course, this is patently obvious and Wife knows this. The Court concludes that Wife has brought this alimony claim in bad faith, just to harass and annoy Husband and run up his legal fees. Further, the Court incorporates its discussion in (16) above.

## IV. ANALYSIS

### 1. Equitable Distribution

In determining how to equitably divide up or assign the small balances contained in the marital portion of Wife's SEPA, representing the increase in value since separation ($14,315.74), and Husband's marital 401(k) ($29,503.89), the total of which constitutes the small marital estate ($43,818), the Court considers and emphasizes in this case, the

16.

relative earning capacities of the parties, the ability to expand earnings in the future, the years forward in the working lives of the parties, given their ages, and, therefore, their abilities to accumulate assets in the future; the amount of the parties non-marital assets; and the amount of marital and non-marital debts of the parties. In doing this analysis, the Court finds that those factors favor Wife much more than Husband, so will be discussed immediately hereafter. Therefore, the Court concludes, in being fair and equitable to the parties, and in exercising its discretion, Wife should retain her marital $14,315.74, and Husband should retain his martial $29,503.89.

First, as to earning capacities, Wife produced (in not complying with the Court and Husband's expectation of production) only her 2019 tax returns, Although she testified this was a "typical" return. In comparing Wife's 2019 federal tax return with Husband's 2019 federal tax return, the Court has concluded in its DISCUSSION set forth heretofore, that Wife's net 2019 income (that is, after taxes) is $126,661 and Husband's net 2019 income (that is, after taxes) is $135,512 per year. These are fairly comparable net incomes.

Second, as to the ability to expand earnings in the future, this factor favors Wife. Wife is 50 years old and Husband is 59 years old. Wife is a sole practitioner ("keep it small, keep it all"). She has testified, though vacillating, that she had some or one big year prior to 2019. That results from her not having to divide profits with partners or pay salaries. Wife's horizon is unlimited. On the other hand, Husband is not independent and has not developed his own "following." He is a non-equity partner and gets only a salary and modest discretionary bonuses. He is not self-employed as Wife. He has only

17.

received small increments in salary over the years. And, at 59, his opportunities are very limited to non-existent.

Third, because Wife is much younger than husband, Wife's working life, going forward, is nine (9) years more than Husband. This is a major factor that favors Wife. While Husband may earn only $8,851 net per year more than Wife, if Wife works nine (9) more years than Husband, because of age discrepancy, she will earn $126,661 net per years x 9 years = $1,139,949 more than Husband. That is over $1 million net more than Husband. And, from these additional earnings, her opportunity to accumulate assets in the future is much greater than Husband's.

Fourth, Wife's non-marital assets are larger than Husband's. This factor favors Wife. Statutory and case law tells us that the amount of the non-marital estate of a party is relevant in dividing up the marital estate. Wife has a non-marital estate. Husband does not. All Husband has is debt. For example, Wife has $74,059.46 non-marital property in her SEPA. Husband has none such in his 401(k). Wife has cash surrender value in large life insurance policy, the amount of which she refuses to disclose. Husband has no such cash surrender value. Wife is a joint owner, with her sister, of 11059 Valley View Drive, Clarks Summit with no mortgage thereon, the value of which Wife will not disclose. Husband has none such. Husband's home has no equity; it is worthless to him if sold, as the mortgage and costs of sale would eat up any profit. The same exists with Husband's North Scranton property that he leases; its value is only $30,000, and it is under water because the mortgage thereon, for $54,893, exceeds its value.

Fifth, as to debts, this, too, favors Wife significantly. Husband is debt-ridden. Husband's marital debts total $78,285.89. Wife's marital debts total only $11,164.00.

18.

Husband's non-marital debts total $270,758.28. The record reveals Wife has no non-marital debts.

In conclusion, Wife is in so much a better condition than Husband, if the Court were to take some small portion of Wife's $14,315.74 marital estate and give it to Husband, it would be equitable under the circumstances. However, under the totality of the circumstances, the Court is comfortable with the award it enters this date, allowing Wife to retain all of her $14,315.74.

The circumstances of Federal District Judge Bram ordering a large sanction against Wife as a result of her misconduct before the court as a lawyer in the amount of $25,000 and proceedings before the Pennsylvania Disciplinary Board and reprimand of Wife with participation by the Chief Judge of the Third Circuit Court of Appeals came up at the hearing. While the Court believes this $25,000 fine and disciplinary action took place in 2018, this $25,000 fine was not listed as a $25,000 debt by Wife, so the Court assumes it was paid by Wife. Thus, the Court will not consider the same or the circumstances surrounding the same at all in its adjudication herein.

The Court would be remiss if it did not comment on the economic victimization by Wife against Husband in the litigation before the undersigned.

When Husband's counsel, Ms. Gelb, credibly testified before the undersigned on June 3, 2021 in support of her legal fees related to the alleged obdurate, vexatious, and dilatory conduct of Wife, Husband's counsel's fees for this simple case, where the marital estate consists of $14,315 for Wife and $29,503 for Husband, for a total marital estate of only $43,818, were between $50,000 and $60,000, this Court realized that Wife had accomplished her goal of running up Husband's legal fees. And, the Court observes

19.

that since June 3, 2021, Husband has incurred <u>more</u> legal fees. And, if Wife appeals, which the Court anticipates she will based on her extreme litigiousness throughout this case, just to run up more legal fees for Husband, Husband's final legal bill will be very substantial.

The Court finds that all the work that Husband's counsel put into the case, defending all of Wife's spurious maneuvers, to be reasonable and necessary. Indeed, the amount of time and effort the undersigned had to put in this case as a direct consequence of Wife's behavior and filings was very significant.

At $200 per hour, which Husband's counsel charges, which this Court finds to be extremely reasonable for her stature in the legal community and her experiences, as of June 3, 2021, $200 per hour divided into $60,000 means Husband's counsel devoted three hundred (300) hours to this case. This is simply outrageous and solely due to the conduct of Wife, a <u>pro se</u> litigant, who is a lawyer. $60,000 in fees (which will be more) for one party to divide up a $43, 818 marital estate is an unfortunate circumstance for that party. The $60,000 fee for Husband alone <u>exceeds</u> the total marital estate of $43,818 to be divided or assigned.

## 2. <u>Alimony</u>

Wife's claim for alimony, the Court finds to be a sham. Wife earns a six figure income; has only herself to support; has never had children; so has no minor dependent; and as discussed previously under <u>Analysis</u> (Equitable Distribution), has a brighter economic future than Husband.

Her insincerity regarding her alimony claim was demonstrated by her <u>failing</u> to even submit an expense list for her personal needs to the undersigned at the June 3, 2021

20.

E.D. hearing. That is because she knows she can support herself from her income as a practicing attorney, which she has done for over twenty (20) years and said income exceeds her needs.

As to 2021, Wife brough no reliable back-up as to income and business expenses and hid her prior years of income (other than 2019), so that Husband and the Court would not see it. The Court finds Wife to be a hostile, argumentative witness, who is not credible.

Her claim for alimony, brought and pursued in bad faith, will be DISMISSED.

## V.    COLLATERAL ISSUES

1. **Nonsuit.** The Court well understands Husband's frustration, but disagrees that the Court should have entered a nonsuit against Wife on her equitable distribution and alimony claims, not require Husband to produce documents (for fear that Wife would disclose them to the public, despite the Court having entered a protective order and seal of the record), and have no equitable distribution hearing.

Once a party raises an equitable distribution and alimony claim, no pleading is required by the other party and those issues are deemed denied according to the Supreme Court Divorce Rules. The parties are, therefore, "at issue." The Court is obligated, applying equitable principles, and going through the statutory equitable distribution factors, to determine the equitable distribution or assignment of marital property and whether or not to award alimony. Just because Wife filed the divorce Complaint does not mean she has the burden of proof. Both parties are to put forth evidence on the

21.

statutory factors (as was done here) and the Court applies equitable principles to "effectuate economic justice," a policy statement in the enactment of our 1980 No-Fault Divorce Statute. Each party has an equal burden of proof on the factors, and the Court decides, on the quantum and quality of evidence, and the credibility of the witnesses, as to which party prevails on the factors.

The Court was obligated to hold a hearing and effectuate economic justice and not deprive Wife of such a hearing.

The granting of a nonsuit against Wife, without a full hearing, is a misnomer. There is no nonsuit when it comes to equitable distribution and alimony. There are factors and equity and credibility determinations. This is not a civil jury or bench trial.

Finally, the Court has discretion concerning the order of witnesses. And, Husband attempting to correlate that to the efficacy or possibility of entering a nonsuit is misplaced, not only for the impropriety of entering a nonsuit but for the Court's responsibility in superintending the hearing and have it run smoothly and orderly and not like a runaway train if Wife proceeded first.

This Court's experience with Wife, in this case, at hearings and conferences in court, is extensive. She objects to everything, she engages in arguments with the other party and the Court, she raises issues that have nothing to do with the issues at hand, she unreasonably prolongs the hearing, and goes off on tangents. An excellent example of this will be discussed in

22.

paragraph 2 hereafter.

On the other hand, Husband's counsel is always well prepared, methodical, and expeditious and her client is responsible, sincere, and credible. Thus, knowing that the equitable distribution hearing on June 3, 2021, and other matters was vital to the smooth, processing of the case, the Court chose to have Husband go first, to expeditiously go through the factors, which he did. Accordingly, it was possible to have a focused hearing, which we did, and to complete all matters, which we did. This would not have occurred if Wife went first, especially when both have equal burdens of proof on the factors.

2. **Spurious, Bad Faith Appeals By Wife to Delay And Spurious Jurisdictional Issues.** When the Court entered a temporary, interlocutory order on December 2, 2020, the Court put right in the order that it was not appealable, because the Court sensed Wife would appeal to delay the case and harass Husband and run up his fees. Wife appealed anyway. Husband appropriately filed a motion to quash with the Superior Court and the Court went to the trouble of writing a Quashal Opinion. Before the Superior Court Could reach the Court's Opinion, it quashed Wife's appeal, based on Husband's motion. In its January 7, 2021 Quashal order the Superior Court instructed Wife that:

> "Generally, only final orders are appealable. See Pa. R. A. P. 341(b)(1)( a final order is any order that disposes of all claims and of all parties), See also Fried v. Fried, 501, A2d 211 (Pa. 1985)(piecemeal determinations and consequent protracted litigation are abhorred in matrimonial actions)."

The Court has repeatedly informed Wife thereafter that in divorces, there

23.

are no appeals from the many temporary orders that may be entered, and one only appeals these orders at the end of the case when a divorce decree is entered, together with the equitable distribution and alimony order.

Notwithstanding, the same, and Wife being aware of the Supreme Court in Fried stating that "piecemeal determinations" by the appellate courts "are abhorred in matrimonial actions," Wife appealed, again, the second time from four (4) temporary orders entered by the Court in open court on February 12, 2021.

Again, Husband filed a motion to quash Wife's appeal and the undersigned went through the trouble of filing a Quashal Opinion. Once again, the Superior Court got to Husband's motion before the undersigned's Quashal Opinion, and quashed Wife's appeal. This time the Superior Court's March 22, 2021 Quashal Order stated:

> "Generally, only final orders are appealable. See Pa.
> R.A.P. 341(b)(1)(a final order is any order that disposes of all claims and of all parties); Fried v. Fried, 501 A.2d 211 (Pa.1985)(issues in divorce are reviewable after entry of divorce decree and resolution of all economic issues).
> Instantly, the February 12, 2021 orders are no final, as they do not resolve outstanding divorce claims."

Prior to the above, Wife went on an ill-conceived campaign, and she still persists in this, that because she filed a petition for allocator (petition for review) to the Pennsylvania Supreme Court from the Superior Court's first Quashal Order of January 7, 2021, quashing Wife's appeal as non-appealable from this Court's December 2, 2020 temporary order entitled "Interlocutory Order and Scheduling Order for Pre-Trial Conference In-

24.

court on the record," this Court is without jurisdiction to do anything in this Case. She did this with respect to a February 11, 2021 matter the Court scheduled in court. The Court explained to Wife, in a February 9, 2021 "Memorandum and Order Re: Continuance," in part, as follows:

First, Wife's request to hear part of the matters outlined in the Court's "Interlocutory Order and Scheduling Order for Pretrial Conference in-Court on the record" of December 2, 2020, that is, only the support aspect thereof and her assertion that this Court is without jurisdiction to proceed with the other issues of said Order is patently incorrect. Wife cites to the Court, **Commonwealth v. Holmes, 933 A.2d 57 (Pa. 2007)**, a criminal case that dealt with what a trial court can do or not do concerning correcting scrivener errors in its order after the appeal of sentencing directly to the Pennsylvania Superior Court. That is inapposite to the case at bar. In the present case, Wife, imprudently, and in violation of the appellate rules of court, filed an appeal to the "Interlocutory Order and Scheduling Order for Pretrial Conference in- Court on the record" of December 2, 2020 the day after it was entered despite the fact that the last paragraph of that Order, paragraph 26, stated:

26. This order is interlocutory and non-appealable because it does not finally dispose of all issues and all parties.

Husband filed a motion to quash Wife's appeal with the Pennsylvania Superior Court as being interlocutory and non-appealable. The undersigned, also, thereafter, filed a detailed quashal opinion on the basis that Wife's appeal was patently interlocutory. Predictably, the Pennsylvania Superior Court quashed Wife's appeal as being interlocutory. Because of Wife's conduct in violating the appellate rules, Husband filed a Motion for Counsel Fees with the Pennsylvania Superior Court but that request was denied.

Inasmuch as the appeal was quashed and the record never moved from the Common Pleas Court to the Pennsylvania Superior Court, this Court immediately rescheduled the matters previously scheduled to be heard on December 17, 2020 pursuant to the December 2, 2020 interlocutory order for February 4, 2021.

The reason Wife asserts that this Court is without jurisdiction to proceed is that she has filed a Petition for Allocator to the Pennsylvania Supreme Court and she mistakenly believes that that ousts this Court with jurisdiction to proceed in the case. To the contrary, Rule 1701(b)(6) lists as an exception and permits the Court to proceed further because the Order

25.

involved was an interlocutory order, quashed by the Pennsylvania Superior Court. Pennsylvania Rule of Appellate Procedure 1701(b)(6) provides:

> After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may [ ... ] Proceed further in any matter in which a non-appealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal or a petition for review of the order.

The rationale for this is obvious. Since, the Pennsylvania Supreme Court is not a Court of right, as is the Pennsylvania Superior Court and the Commonwealth Court, but one of discretion, there really is no appeal perfected to the Pennsylvania Supreme Court until the Pennsylvania Supreme Court grants allocator and in that allocator sets forth the issue(s) it wishes to hear. Since the Pennsylvania Supreme Court only grants allocator in two percent (2%) of the cases in which parties seek permission to appeal the Court wanted to make sure that with respect to interlocutory orders the wheels of justice would continue to turn and parties would not be prejudiced by frivolous petitions for allocator involving orders that are not even appealable as decided by the Pennsylvania Superior Court in this case which appeal court is a court of right not discretion. In this respect, this jurist cannot conceive of a more patently unappealable order than its order of December 2, 2020 entitled "Interlocutory Order and Scheduling Order for Pre-Trial Conference in Court on the record."

Thus, this Court clearly has jurisdiction to proceed on Thursday, February 11, 2021.

Even though the foregoing was clearly set forth to Wife, she argued to this Court at the June 3, 2021 equitable distribution hearing and in her post- hearing brief that the Court does not have jurisdiction.

Coupled with the above, Wife argued that the record never came down from the Pennsylvania Superior Court(notwithstanding the two (2) quashal orders of Wife's appeals by the Superior Court) and that the undersigned was proceeding despite undersigned's stay on the appeal from the first order, which was quashed by the Super Court five (5) months ago.

26.

First of all, Wife's claim that the record never came down was untrue and reckless. The Court arranged, at the equitable distribution hearing on June 3, 2021, for the individual in the Prothonotary's Office in Lackawanna County to testify on this issue. She arrived with her boss, the Prothonotary, and the Solicitor for the Prothonotary's Office. The employee testified credibly about the many years she has been processing the appeals from the Lackawanna County Court of Common Pleas to the Pennsylvania Appellate Courts. She testified clearly, and with certainty, with respect to Wife's two improvident appeals to the Superior Court, which were quashed promptly by the Superior Court. She testified that she never had a chance to send the record up to the Superior Court from her office, and the record never left her Common Pleas office to the Superior Court prior to the deadline or at any time, because the Superior Court quashed both appeals before she could bundle everything up and send the record up to the Superior Court.

Instead of being embarrassed, and apologizing for her mistake and false accusation that the record was still up with the Superior Court, Wife proceeded to delay, drag on, and somewhat badgered the witness and would not relent with an embarrassing performance for a lawyer acting in a pro se capacity, before the witness, her superior, and counsel for the Prothonotary's Office. This one issue consumed much of the time at the June 3, 2021 hearing.

As to the Pennsylvania Supreme Court and the petition for review before it, which was irrelevant to the undersigned's proceeding, as to the cited section of appellate court rule, Rule 1701(b)(6), Wife, Husband, and the Court received

27.

notice from the Supreme Court that the Supreme Court entered a Per Curiam order on June 14, 2021 that Wife's "Petition for Allowance of Appeal" was, predictably, denied.

Lastly, Wife contends that there is no jurisdiction because with her first quashed appeal, undersigned entered a stay order. This argument is without merit. When Wife's improvident appeal was quickly quashed by the Superior Court, the undersigned resumed with the listing of the legal proceedings the undersigned had stayed by reason of the appeal. With the appeal quashed the undersigned's stay fell. The undersigned deducts that Wife feels the undersigned is violating the undersigned's stay. The undersigned's stay, according to the undersigned, is no longer in effect now that Wife's appeal was quashed as the appeal was the only reason for the stay. Furthermore, the record never left the lower court and has always been there because Wife's appeal was quashed so fast that the Prothonotary of Lackawanna County never had time to send up the record.

### 3. Wife Erroneously Contends that The Undersigned Believes There Is No Post-Divorce Alimony in Pennsylvania.

In Wife's post-hearing brief, Wife attaches page 24 from a February 11, 2021 transcript. As best as the undersigned can tell, the Court was explaining to Wife that she had to make an election prior to the hearing as to whether she was going to proceed on alimony pendente lite or spousal support. The State Supreme Court Rules expressly prohibit an APL order and a spousal support order to exist at the same time. Wife was giving Husband and the Court a hard time on this issue, insisting "I want them both." It then appears:

28.

THE COURT: There is no post-divorce alimony. There is either --

MS. POLLICK: Well, there is. I did have research - -

THE COURT: Can you hear her?

MR. TROZZOLILLO: No, your Honor.

MS. GELB: -- Your Honor - -

MS. POLLICK: I'll pull my - -

THE COURT: Can you come up - -

That one page is a cut- off transcript, and the undersigned does not know what went before or after. However, of course, the undersigned knows there is post- divorce alimony in Pennsylvania, if a party, going through the alimony factors, can persuade the court that he or she is an appropriate candidate for alimony at the equitable distribution hearing.

The undersigned has lectured on alimony to the bench and bar many times over the years and has authored many legal articles on alimony in Pennsylvania, and chairs the Pennsylvania Joint State Government Commission Committee on Domestic Relations, and drafted statutory alimony provisions for consideration by the Pennsylvania Legislature.

In the case at bar, the Court carefully reviewed the alimony statutory factors with both parties and counsel at the June 3, 2021 hearing and ordered post-hearing briefs on the same. In the evaluation, the Court not only considered that Wife was not a candidate for alimony but that her claim for the same was a sham, in that Wife was in a better earning and economic situation than Husband and Wife's failure to even bother to prepare a personal

29.

expense sheet to attempt to show personal needs and expenses beyond her income or to bring the required document to reveal her earnings and earning patterns to shield the same from the eyes of Husband and the Court.

3.    **Wife's Abusive Discovery Requests.**

Wife's outrageous discovery requests were meant to harass Husband and to run up his legal fees, with which she was successful. The Court properly struck subpoenas which were issued or to be issued by Wife in bad faith.

The very detailed requirements for the parties' filing of Inventories and Pre-Trial Statements (meant by the Supreme Court Rules to cover discovery in the vast majority of divorce cases, except for those that might be highly complex, involving complicated assets, with tax implications and depreciation issues and inter-locking corporations and the like) certainly was appropriate for this tiny marital estate of only $43,818 to divide/assign, of which was $14,315 for Wife, and $29,503 for Husband, consisting of Wife's SEPA and Husband's 401(k). Wife failed to be forthcoming with discovery in the Inventory and Pre-Trial Statement and at the hearing; while Husband was fully compliant.

30.

On February 11, 2021 this Court ordered, in part, the following:

> 2.On Monday, April 12, 2021, Wife will deliver to husband's counsel copies of her 2019 and 2020 federal and state income tax returns with Schedule C's attached, copies of Schedule C's only for 2015, 2016, 2017 and 2018. As to the 2019 and 2020 federal and state returns, Wife will deliver copies of back-up documents supporting the deductions for expenses reported on her 2019 and 2020 tax returns. Wife will also deliver copies of gross receipts for the months/weeks leading up to Monday, April 12, 2021. It is essential to the Court, since Wife is self-employed, to see the pattern of her gross income over the recent years and the nature of expenses and back-up to determine her net earning capacity.

> 3.On Monday, April 12, 2021, Husband's counsel will deliver to Wife copies of his 2019 and 20201 federal and state income tax returns with W-2's attached and copies of his W-2'S for 2015, 2016, 2017, and 2018. Even though Husband is salaried and receives W-2's, his pattern of income is relevant to determine his net earning capacity.

Determination by the Court of the parties' patterns of income and net earning capacities were essential for the April 16, 2021 APL hearing and the June 3, 2021 equitable distribution and alimony hearing. Wife failed to appear to exchange the above documents on April 12, 2021. Husband appeared and was ready for the exchange on April 12, 2021. The parties were well aware that these same documents were necessary and required to be produced at the June 3, 2021 hearing in order for the Court to fulfill its obligation to make these determinations. Wife, however, purposely refused and failed to comply and purposely frustrated the judicial process and administration of justice. As usual, Husband fully complied upon the good advice and preparedness of his counsel.

31.

The Court's discovery order of February 11, 2021 states, in part, as follows:

> 2.As to further discovery, Wife's request is DENIED. Para. 23 of the 12/2/20 states: "In lieu of paragraphs 6 thru 22, inclusive, the Court will address discovery regarding the divorce to divide Husband's 401(k) and Wife's SEPA as they pertain to the marital estate.

## DISCUSSION

> This is a childless, short term marriage with the parties being lawyers, making over $100,000 per year and no marital assets, except Wife's SEPA (marital portion to be determined) and Husband's 401(k). Wife is self-employed and has no employees. Husband is with a law firm and receives a salary and is a W-2 employee. The Court finds Wife's subpoena and notice to attend, harassing and annoying serving no reasonable, legitimate purpose, other than to harass Husband.
> The PA Supreme Court Rules Committee did an excellent job devising the filing of a very detailed Inventory and Pre-Trial Statement which is certainly well equipped for the proper adjudication of dividing up this 2 asset case (Wife's SEPA and Husband's 401(k)). Further, the Court has entered this date a detailed order concerning the April 16, 2021 APL full day hearing requiring the parties to provide financial documents that the Court believes reasonable and necessary. No further discovery is needed except for harassment purposes, which this Court will not tolerate

As set forth above in the February 11, 2021 discovery order, what was reasonable, necessary, and appropriate to determine the parties' net earnings and pattern of income for the APL hearing and alimony hearing were the documents cited therein to be exchanged and produced, which Wife refused and failed to do and Husband did. As to possibly        the marital portion of Wife's SEPA and Husband's 401(k) at the June 3, 2021 equitable distribution hearing(this is simply a 2 asset case), the Pennsylvania Supreme Court Rules governing divorce require the parties to complete and attach documents and file very detailed Inventories and Pre-Trial Statements by way of discovery, "which is certainly well equipped for the proper adjudication of dividing up this 2 asset case (Wife's SEPA and Husband's 401(k)." (discovery order of 2/11/21). Of course, Wife did not comply with this discovery contained in her Inventory and Pre-Trial Statement, which were woefully inadequate, and failed and refused to produce

32.

documents for the June 3, 2021 equitable distribution hearing. To the contrary, Husband fully complied and produced what he had to produce.

The Court found "no further discovery is needed" and, as to Wife, "except for harassment purposes, which this Court will not tolerate." "The Court finds Wife's subpoenas and notice to attend, harassing and annoying serving no reasonable legitimate purpose, other than to harass Husband." (2/11/21 order).

BY THE COURT:

_____
EMANUEL A. BERTIN, S.J.
Appointed Visiting Judge

CC: Please note that written notice of the foregoing Order has been provided to each party pursuant to Pa.R.Civ.P. 236 (a)(2)

Johanna Gelb, Esq. *via email*
Cynthia Pollick, *pro se* *via email and mail*

33.

CYNTHIA POLLICK                      :     IN THE COURT OF COMMON
                                     :     PLEAS OF LACKAWANNA
                                     :     2021 JUL 23  P 3 55
          v.                         :     20 FC 40119
                                     :
ANTHONY TROZZOLILLO                  :
                                     :
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

                                     :     LACKAWANNA COUNTY
                                     :     DOMESTIC RELATIONS SECTION
CYNTHIA POLLICK                      :
                                     :     20 DR 00205
          v.                         :
                                     :     PACSES CASE NUMBER
ANTHONY TROZZOLILLO                  :     517300200
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM OPINION AND ORDER RE: HUSBAND'S OMNIBUS PETITION FOR SANCTIONS PURSUANT TO 42 PA.C .S. § 2503(7) AND (9)

July 20, 2021                               BERTIN, S. J.
                                            Appointed Visiting Judge

The Court has the legal authority to award counsel fees as a sanction as part of the

taxable costs of the case, by statute, pursuant to 42 Pa. C.S. §2503(7) and (9).

Said statute provides, in part, as follows:

> §2503. Right of participants to receive counsel fee . The following
> participants shall be entitled to a reasonable counsel fee as part
> of the taxable costs of the matter:

>> (7) Any participant who is awarded counsel fees
>> as a sanction against another participant for
>> dilatory, obdurate or vexatious conduct during the
>> pendency of a matter.

>> (9) Any participant who is awarded counsel feeds because
>> the conduct of another party in commencing the matter
>> or otherwise was arbitrary, vexatious or in bad faith.

After careful consideration, the Court will enter an order for reasonable counsel fees in favor of Husband and against Wife for Wife's dilatory, obdurate, vexatious, arbitrary, and bad faith conduct in both the divorce case and the domestic relations litigation (spousal support/ alimony pendente cases) under 42 Pa. C.S. §2503(7) and (9) as taxable costs in those matters.

Wife's purposeful misconduct and misbehavior is egregious and out of proportion because she is a member of the Pennsylvania Bar and knows better and has been reminded repeatedly, by the Court, to put this divorce case in proper perspective, which she has not done.

This is Husband's third marriage, and he has adult children. This is Wife's first marriage, and she has no children. This marriage is a very short-term marriage, as it lasted only three (3) years and seventeen (17) days. No children were born of this marriage, There is only basically, two marital assets to divide, Husband's 401(k) pension, which he started at the time of this marriage and Wife's SEPA pension which she started prior to this marriage and has grown post-marriage. Both parties are practicing attorneys and are self-supporting.

The only matters to have been litigated in this case was Wife's request for alimony pendente lite award after hearing, and the equitable distribution hearing, to basically divide the two pensions. Wife, however, withdrew her alimony pendente lite claim and did not appear in court on the date of hearing. That left only the equitable distribution hearing, involving two pensions.

As such, this case should have taken only a couple of hours, at most, to resolve amicably with hardly any legal fees for either party.

Instead, Wife has engaged in outrageous conduct that was, and is, disrespectful of, and to, the court system. As such, Husband has been caused to incur substantial legal fees, needlessly, totally out of proportion to the issues before the Court, which involve Husband's 401(k) and

2.

Wife's SEPA, a modest divorce case at best. (See the Court's Memorandum Opinion Re: Equitable Distribution and Order, which the Court attaches hereto, and incorporates herein, as Exhibit A).

The Court adopts the findings of Husband, as set forth in Husband's Omnibus Petition for Sanctions, inasmuch as those findings the Court finds to be accurate, as follows:

## I. BACKGROUND

1. Wife's conduct throughout the divorce and aborted domestics relations litigation[1] has been vexatious, harassing, and designed

6. [ . . . ] in his February 11, 2021 Order, Judge Bertin, sua sponte, found Wife's Subpoenas and Notices to Attend were "harassing and annoying serving no reasonable, legitimate purpose, other than to harass Husband."

7. Per Judge Bertin's April 19, 2021 Order, Husband now files this Omnibus Petition seeking sanctions for Wife's conduct, as more fully set forth herein.

8. Husband incorporates each and every allegation contained in his Petition for Sanctions (Wife's failure to file Inventory) (filed 3/29/21), Petition for Contempt (Wife's Contempt of Orders Regarding Exchange of Financial Information)(filed 4/16/21), and Petition for Contempt (Wife's Contempt of 2/11/21, 3/10/21 & 4/15/21 Orders Regarding APL)(filed 4/16/21), as if the same were fully set forth at length herein.

## II. WIFE'S DILATORY, VEXATIOUS, AND HARASSINGF CONDUCT IN DIVORCE LITIGATION[2]

15. To date Wife's dilatory, vexatious and harassing conduct includes the following.

16. 2/5/20    Husband filed Preliminary Objections, and supporting Brief, to Wife's Amended Divorce Complaint. He did so because it

---

[1] Wife filed a claim for spousal support in March 2020. She abandoned the spousal support claim in favor of an alimony pendente lite (APL) claim on February 11, 2021. She then withdrew her APL claim (scheduled for an all day Hearing on April 16, 2021) on April 1, 2021. She then sent an e-mail to Judge Bertin's assigned law clerk on April 16, 2021, at 2:45 a.m., knowing he would not received it until he had already traveled 2+ hours to Lackawanna County (and he did not), telling him she was not appearing in Court at the Hearing at 10:00 a.m. --even though it was still scheduled, even though Judge Bertin issued a Memorandum and Order on April 15, 2021 notifying Wife the Hearing was still scheduled and that he wanted to colloquy her on the withdrawal of her APL claim, and even though she received his 4/15/21 Memorandum and Order.

[2] Husband has included only a brief reference to the basis for his objections to Wife's pleadings, discovery, etc. in this Omnibus Petition for Sanctions because he set forth his objections, in detail, in the documents themselves.

contained a jury trial request, and scandalous, impertinent matter. In response, Wife filed a Second Amended Divorce Complaint.

17. 2/10/20    Husband filed Preliminary Objections, and supporting Brief, to Wife's Second Amended Divorce Complaint. He did so because it contained the same jury trial request, and scandalous, impertinent matter. The Court GRANTED all Husband's Preliminary Objections on December 2, 2020 (¶4).

18. 2/5/20    Husband filed a Petition to Seal Record. He did so because Wife was making private matters public. The Court GRANTED Husband's Petition on March 10, 2021.

19. 4/13/20    Husband filed Objections to Wife's Subpoena for Documents on Gerard M. Garvey, CPA (Wife wanted tax information previously requested). The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶8).

20. 4/15/20    Husband filed Objections to Wife's Two Subpoenas for Documents on Paul M. Ludovici Contracting and Paul Ludovici (Wife wanted years of bills for Husband's non-marital rental residence, and employment records for his son). The Court GRANTED Husband's Objections and QUASHED these Subpoenas on December 2, 2020 (¶9).

21. 4/15/20    Husband filed Objections to Wife's Subpoena for Documents on Danny Portanova d/b/a Portanova's Body Shop (Wife wanted invoices and bills for repairs done for Husband's family). The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶10).

22. 4/17/20    Husband filed a Motion to Designate Financial Information in Plaintiff's Motion to Compel as a Confidential Document Not Publicly Accessible Pursuant to Public Access Policy of the Unified Judicial System of Pennsylvania. He did so because Wife attached his financial information to a court document without a Confidential Information Form. When Attorney Gelb asked Wife to file one, she refused on the basis she was not subject to this Policy as a pro se plaintiff. (She was). The Court GRANTED Husband's Motion on March 10, 2021.

23. 4/17/20    Husband filed a Motion for a Protective Order. He did so when Wife refused to file Husband's financial with a Confidential Information Form pursuant to the above-referenced Policy. The Court GRANTED Husband's Motion on March 10, 2021.

24. 4/17/20  Husband filed a Section Motion for a Protective Order. He did so because Wife had served discovery on Husband which was wholly unrelated to this litigation. He asked the Court to prohibit Wife from serving any more discovery absent Court review prior thereto, and to deem all information procured, produced, provided, and/or exchanged during this litigation as confidential information, and to deem it as confidential information in any other litigation involving Husband and/or the parties. The Court GRANTED Husband's Motion on March 10, 2021.

25. 4/17/20  Husband filed an Answer to Wife's Amended Motion to Compel. He did so because he responded to Wife's first set of discovery; as such, her Motion lacked any merit. The Court DISMISSED Wife's Motion on December 2, 2020 (¶6).

26. 4/17/20  Husband filed Objections to Wife's Subpoena for Documents on Victor Alfieri Society (Wife wanted membership listing, trustee meetings, club meetings, bocci schedules). The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶11).

27. 4/21/20  Husband filed an Answer to Wife's Motion to Compel the Allowance of the Service of Subpoenas with respect to: Gerard M. Garvey, Paul Ludovici Contracting and Victor Alfieri Society (filed 4/20/20). He did so because they were wholly without merit as set forth in his Objections to each. The Court DISMISSED Wife's Motion to Compel on December 2, 2020 (¶7).

28. 4/21/20  Husband filed Objections to Wife's Subpoena for Documents on PNC Bank (Wife wanted bank/account statements, debt purchases and/or withdrawals, for a non-marital asset). The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶12).

29. 5/12/20  Husband filed Objections to Wife's Subpoena for Documents on Discover (Wife wanted audio recordings, documents, transcripts of record calls, transcripts of all calls for her account). The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶15).

30. 5/15/20  Husband filed Objections to Wife's first Subpoena for Documents on AT&T (Wife wanted logs or transcripts related to any email security notice that her account was changed). The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶13).

5.

31. 5/22/20    Husband filed Objections to Wife's second Subpoena for Documents on AT&T (Wife wanted text messages between the parties for three years). The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶13).

32. 5/22/20    Husband filed Objections to Wife's Subpoena for Documents on Chase (Wife wanted logs, transcripts of calls, etc. related to any calls requesting a change, limit, records related to her or her business). The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶14).

33. 9/10/20    Defendant filed an Answer to Wife's Motion to Compel Answers and Responses to 2nd and 3rd Sets of Discovery.[3] He objected to this discovery because it was so outrageous as to be sanctionable (Wife's 2nd Set was a mirror image of the discovery Husband served on her—which she served *after* she objected to every single request of his—plus several more; for example, in #49 of her 2nd Set, Wife asked for "Any and all communications, including any types of electronic communications, whether in the form of text message, email, voicemail, direct message, private message, IMessage, Instant messenger, Facebook messenger, Facebook posts, Instagram posts, Snapchat, LinkedIN Message, LinkedIn Groups, Google +, group chats, or any other type of electronic messaging service, between Defendant and Johanna Gelb or any member of the Gelb family and any member of the Dyller Law Firm before Defendant filed for Divorce on December 13, 2019, for the last three (3) years[4] and in #6 of her 3rd Set, Wife asked "is Defendant affiliated with any crime families, including but not limited to the Genovese mafia? If yes, please list the names of the crime family, listing of members with addresses and when Defendant became associated with the same"—to be clear there is NO affiliation).[5] Judge Bertin DISMISSED Wife's Motion on December 2, 2020 (¶22).

34. 10/20/20   Husband filed Objections to Wife's Subpoena for Documents on Banner Life Insurance Co. (Wife wanted post separation

---

[3] Husband attached Wife's Third Set of Interrogatories and Third Request for Production of Documents, as Exhibits A & B, respectively, to his Emergency Motion to Stay Litigation which he filed with the Court on 4/21/20 due to Wife's complete abuse of process and the judicial system.

[4] As stated on p. 24, footnote 2, of Husband's Omnibus Brief (filed 11/5/20), Attorney Barry Dyller, of the Dyller Law Firm, is married to the Honorable Lesa S. Gelb, who is Attorney Gelb's sister.

[5] By 9/10/20, Husband had already filed Answers & Objections to Wife's Interrogatories (35 questions, many with sub-parts) and Request for Production of Documents (26 requests)(served 3/16/20 and responded to on 4/20/20). Then, on 4/8/20, Wife served Interrogatories #2 (6 questions) and on 4/12/20, Request for Production of documents #2 (57 requests). Then on 4/19/20, Wife served Interrogatories #3 (11 questions) and Request for Production of Documents #3 (3 requests). Finally, on 10/5/20, Wife served Request for Production of Documents #4 (1 request).

6.

information).  The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶16).

35. 10/20/20    Husband filed Objections to Wife's Subpoena for Documents on Administrative Office of Pennsylvania Courts (Wife wanted all Orders, correspondences, letters, notes, phone logs, records on any case assignment to a Judge).  The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶17).

36. 10/20/20    Husband filed Objections to Wife's Subpoena for Documents on Comcast (Wife wanted surveillance video for 10/19/2020 from 1:00 to 4:00 p.m. at Xfinity store in Dickson-City-nine months post date of separation).  The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶18).

37. 10/20/20    Husband filed Objections to Wife's Subpoena for Documents on Dickson City Police Department (Wife wanted phone calls, non-emergency calls, transcripts, incident reports, records dealing with a call from Adrian from Xfinity in Dickson City on 10/19/2020 between 1:00 p.m. and 4:00 p.m. –nine months post date of separation).  The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶19).

38. 10/21/20    Husband filed Objections to Wife's Subpoena for Documents on Verizon (Wife wanted texts, data usage, Internet sites accessed, and access to social media sites, photos, audio recordings, associated with Husband's account, that is also associated with Husband's Son's and Daughter's account).  The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶20).

39. 10/27/20    Husband filed Objections to Wife's Subpoena for Documents on Lackawanna County Government Center (Wife wanted video surveillance from inside the building, street level, ground floor, of 123 Wyoming Avenue., where public enters from 10/26/20 from 9 am to 4 pm and 6/19/20—both dates being post date of separation).  The Court GRANTED Husband's Objections, and QUASHED this Subpoena on December 2, 2020 (¶21).

40. 11/5/20    Husband filed his Answer to Wife's Motion to Enforce Subpoenas on 911 Emergency Services, Gerard Garvey, Paul Ludovici, Danny Portanova, Victor Alfieri Society, Kevin Perry, PNC, AT&T, Discover, Chase, AOPC, Dickson City Police Department, Banner Insurance Company, Comcast, Verizon, and Lackawanna County Government (filed 11/2/20).  The Court did not rule on this Motion

7.

per se. However, since the Court quashed all the Subpoenas identified by Wife in this Motion on either December 2, 2020 or February 11, 2021, the Court effectively DISMISSED Wife's Motion.

41. 11/5/20    Husband filed his Omnibus Brief in support of his objections to Wife's discovery/petitions/motions as per Judge Bertin's October 6, 2020 Order.

42. 11/5/20    Husband filed his 39 Exhibits to Omnibus Brief as per Judge Bertin's October 6, 2020 Order/

43. 11/16/20    Husband filed his Reply Brief as per Judge Bertin's October 6, 2020 Order.

44. 12/16/20    Husband filed a Motion to Quash Appeal, Application for Relief (seal lower court record pending appeal), and Application for Relief (fees) in the Superior Court of Pennsylvania (Wife's 1st appeal). He did so because Wife filed an appeal to Judge Bertin's December 2, 2020 Order, which he clearly designated "interlocutory" in ¶26. The Superior Court of Pennsylvania GRANTED Husband's Motion to Quash on January 7, 2021, and denied the other two motions.

45. 2/10/21    Husband responded to Wife's Petition for Allowance of Appeal to the Supreme Court of Pennsylvania. He did so as Wife appealed the January 7, 2021 Order granting his Motion to Quash her first appeal.

46. 2/25/21    Husband filed a Motion to Quash Appeal, Application for Relief (seal lower court record pending appeal), and Application for Relief (fees) in the Superior Court of Pennsylvania (Wife's 2nd appeal). He did so because Wife filed an appeal to Judge Bertin's February 11, 2021 Orders, also clearly designated "interlocutory"—even though she told Judge Bertin on February 11, 2021 that she knew what an Interlocutory Order was, and that it could not be appealed till the end of the case. The Superior Court of Pennsylvania GRANTED Husband's Motion to Quash on March 22, 2021, and denied the other two motions.

47. 3/4/21    Husband filed an Answer to Wife's Preliminary Objection to this Counterclaim, and Opposing Brief. He did so because Wife's pleading lacked any merit. The Court has not ruled on this as of the date of the filing of this Petition. (Attorney Gelb noted this, and asked for legal fees, in her 3/4/21 letter to Judge Bertin, ¶5, filed 4/13/21).

8.

48. 3/10/21    Husband attended a Hearing on whether the parties' marriage was irretrievably broken due to the "confusion" Wife created by filing a Counter-Affidavit on November 13, 2020, withdrawing it on November 16, 2020, and filing another one on November 16, 2020, thereby necessitating a Hearing. (See Judge Bertin's December 2, 2020 Order, ¶2, footnote 1). Then, at the Hearing, Wife admitted the marriage was irretrievably broken.

49. 3/29/21    Husband filed a Petition for Sanctions (Wife's failure to file Inventory). He did so based on Wife's failure to comply with Judge Bertin's February 11, 2021 Order. Judge Bertin deferred resolution of this Petition until June 3, 2021, after Hearing.

50. 4/1/21    Wife file a Praecipe to Withdraw Alimony Pendente Lite (APL) Claim, after urging the Court to promptly schedule the APL Hearing, thereby delaying the case at least another two months as the Court could have simply scheduled the equitable distribution hearing on April 16, 2021 instead. Judge Bertin said that Wife felt the APL Hearing was a "matter of urgency" in ¶8 of his April 15, 2021 Order—an Order which Wife flat out violated, and which Judge Bertin noted in his April 16, 2021 Order when he said that he "will not issue a bench warrant for Wife's arrest for her blatan and willful disregard of the Court's Memorandum and Order of 4/15/21."

51. 4/9/21    Husband filed an Answer to Wife's Motion for Sanctions. He did so because Wife's Motion lacked any merit. Judge Bertin DISMISSED Wife's Motion on April 16, 2021.

52. 4/12/21    Husband's counsel waited 30 minutes for Wife to appear at her office to exchange financial information per Judge Bertin's February 11, 2021 and March 10, Orders. Wife did not appear (nor did she intend to). Husband incurred legal feeds due to Wife's conduct, i.e. he procured his financial documents; prepared a Certificate of Delivery to confirm said exchange; etc.

53. 4/16/21    Husband filed a Petition for Contempt (Wife's Contempt of Orders Regarding Exchange of Financial Information). He did so seeking fees he incurred when Wife failed to appear at Attorney Gelb's office on April 12, 2021, as ordered to by Judge Bertin on March 10, 2021. Judge Bertin deferred resolution of this Petition until June 3, 2021, after Hearing.

54. 4/16/21    Husband filed a Petition for Contempt (Wife's Contempt of 2/11/21, 3/10/21 & 4/15/21 Orders Regarding APL). He did so seeking fees he incurred since February 11, 2021, related to Wife's

9.

APL claim, which she withdrew on April 1, 2021, as she never intended to pursue the same. Judge Bertin deferred resolution of this Petition until June 3, 2021, after Hearing.

55. 4/27/21   Husband filed an Answer to Wife's Motion for 7 Day Extension. He did so because Wife made false allegations in her Motion about Husband's counsel which he had to refute on the record.

56. 4/29/21   Husband filed a Response to Wife's "Answer" to Defendant's Petition for Contempt (Wife's Contempt of Orders Regarding Exchange of Financial Information). He did so because Wife made false allegations in her Motion about him and his counsel which he had to refute on the record.

57. 4/29/21   Husband filed a Response to Wife's "Answer" to Defendant's Petition for Contempt (Wife's Contempt of 2/11/21, 3/10/21 &4/15/21 Orders Regarding APL). He did so because Wife made false allegations in her Motion about him and his counsel which he had to refute on the record.

III.   WIFE'S DILATORY, VEXATIOUS, AND HARASSING CONDUCT IN DOMESTIC RELATIONS LITIGATION

59. 4/21/20   Husband filed Objections to Wife's Subpoena for Documents on Kevin Perry, Domestic Relations Conference Officer (Wife wanted e-mails between Mr. Perry and Husband's counsel regarding the support case). The Court GRANTED Husband's Objections, and DENIED this Subpoena on February 11, 2021.

60. 6/29/20   Husband filed Objections to Wife's Subpoena for Documents on 911 Emergency Services (Wife wanted 911 tapes related to alleged theft of her purse when she was at Family Court on 6/19/20—five months post date of separation). The Court GRANTED Husband's Objections, and DENIED this Subpoena on February 11, 2021.

61. 6/29/20   Husband filed a Motion to Quash Wife's Subpoena for Documents on 911 Emergency Services. Husband did this since Wife had *already* issued the Subpoena. The Court GRANTED Husband's 8 Motion, and DENIED this Subpoena on February 11, 2021.

62. 6/9/20   Wife issued a Subpoena to Attend and Testify on Attorney Girard Mecadon, her landlord in June 2020. Husband opposed this in his Omnibus Brief (filed 11/5/20) because it was irrelevant (Wife wanted Attorney Mecadon to bring all video footage taken at his place of business, and all internet services agreements showing that

10.

he provided internet service to her place of business, and any and all mail that he collected since February 2020- post date of separation—to a support conference). The Court DENIED this Subpoena on February 11, 2021.

63. 6/9/20    Wife issued a Subpoena to Attend and Testify on Attorney Thomas Killino, a co-tenant in June 2020. Husband opposed this in his Omnibus Brief (filed 11/5/20) because it was irrelevant (Wife wanted Attorney Killino to bring phone records showing any contact with Husband or Husband's son—neither of whom he knew—to a support conference). The Court DENIED this Subpoena on February 11, 2021.

64. 6/9/20    Wife issued a Subpoena to Attend and Testify on Husband's Son. Husband opposed this in his Omnibus Brief (filed 11/5/20) because it was irrelevant (Wife wanted Husband's son, who resides out of state, to bring tax returns, video phone internet footage, and her business files—none of which he had—to a support conference). The Court DENIED this Subpoena on February 11, 2021.

65. 6/12/20    Wife issued a Subpoena to Attend and Testify on Thomas Summerhill, her current next door neighbor, Husband opposed this in his Omnibus Brief (filed on 11/5/20)because it was irrelevant (Wife wanted him to bring video footage, etc. on 6/11/20, five months post date of separation, to a support conference). The Court DENIED this Subpoena on February 11, 2021.

66. 6/12/20    Wife issued a Subpoena to Attend and Testify on Husband's Son. Husband opposed this in his Omnibus Brief (filed 11/5/20) because it was irrelevant (Wife wanted Husband's son, who resides out of state, to bring her tax returns, video footage, and social security car, and business files—none of which he had—to a support conference). The Court DENIED this Subpoena on February 11, 2021.

67. 2/11/21    Judge Bertin said in the Order entered this date he found Wife's Subpoenas and Notices to Attend were *"harassing and annoying serving no reasonable, legitimate purpose, other than to harass Husband."* (Emphasis added)

(Husband's Omnibus Petition for Sanctions, at 1-28).

The Court agrees with Husband when he stated:

Wife likes to say she is an attorney on the one hand, but not an

11.

attorney on the other hand. She is an attorney. She is bound by ethical rules. She doesn't get a "pass" to violate every court order because she is pro se, and neither should (nor do) pro se parties.

(Husband's Brief in Support of Omnibus Petition for Sanctions, at 6).

The foregoing findings, demonstrating an ongoing pattern of obdurate, vexatious, and dilatory misconduct by Wife, is supplemented by the undersigned's Exhibit A. (Memorandum Opinion Re: Equitable Distribution and Alimony, Issued Simultaneously with Divorce Decree, with Order Re: Equitable Distribution and Alimony attached thereto). The combination of the findings and Exhibit A clearly show the gravity, and the continuous and relentless nature, of Wife's misconduct.

The final appearance of Wife in court, before the undersigned, on June 3, 2021, at the equitable distribution hearing, was characteristic of her conduct throughout the case. Wife was objecting to the jurisdiction of the Court to hold the June 3, 2021 equitable distribution hearing, because she asserted that the record was still up in the Superior Court as a result of her 2 inappropriate appeals, both of which were readily quashed by the Superior Court (the undersigned filed 2 Quashal Opinions with the Superior Court and the Superior Court quashed both appeals on Husband's Motion to Quash). Her assertion was false. The records never went up to the Superior Court on either of her appeals. The reason was that on both appeals a deadline was set by the Superior Court for the Prothonotary of Lackawanna County to get the record up to the Superior Court, but since the Superior Court quashed both appeals before expiration of the deadline, the Prothonotary never sent the record up because there was no reason to do so. Therefore, the record was always here in the Courthouse in Lackawanna County and never left Lackawanna County. Accordingly, Wife's objection to holding the hearing for lack of jurisdiction, because of an unreturned record, was fallacious.

Sensing Wife would not accept this simple explanation or even a letter from the Prothonotary's Office of Lackawanna County, the Court instructed its assigned law clerk to notify the Prothonotary to be present in court to explain the circumstances on the record to Wife.

The long term employee from the Prothonotary's offices, who had been processing appeals and sending up records to the appellate courts from Lackawanna County for years appeared, with her supervisor (the Prothonotary of Lackawanna County), and the Solicitor for the Office of the Prothonotary of Lackawanna County.

The appeals employee testified clearly that she knows, for certain, that the record in both of Wife's appeals never went up to the Superior Court, is here, and has <u>always</u> been here. She explained she never sent the record up, because the Superior Court quashed the appeals before the deadline that she had to send up the record.

Instead of simply thanking the County employee for the information and explanation, Wife turned the kind gesture into a circus and a very embarrassing performance by Wife, and scene before the Solicitor, Prothonotary, and the employee, the latter of whom underwent irrelevant cross-examination, which took away precious time from the equitable distribution hearing and other important matters before the Court. The Prothonotary's office was only trying to be helpful to explain to Wife why her assumption about the record was wrong.

Wife's conduct was obdurate and vexatious and delaying. It was a perfect example, a textbook example, of how to be obdurate, vexatious, and delaying.

Further, at the June 3, 2021 equitable distribution hearing, Wife refused and failed to produce required documents and was generally uncooperative, withholding economic information from Husband and the Court. This behavior, as well, was obdurate, vexatious, and delaying.

13.

Husband's counsel took the witness stand in support of Husband's request for an award of legal fees for Wife's obdurate, vexatious, and delaying misconduct, throughout the case, which he alleged caused him to incur substantial legal fees.

Husband's counsel was an excellent witness. At age 58, she has been practicing law for 34 years. Her practice consists of approximately ½ family law cases and ½ Title 7 Discrimination cases. She serves as co-chair of the Rules Committee of Lackawanna County for Family Law. She bills at $200.00 per hour at 6 minute increments. She is a sole practitioner (no law associates or secretaries) with an office in downtown Scranton, where she shares office space.

The Court finds $200.00 per hour more than reasonable for the proximate legal community, where Husband's lawyer testified that hourly rates run from $150.00 per hour to $250.00 per hour to $300.00 per hour, and she is well known in that legal community, very experienced in family law (there are approximately 10 top family lawyers, including herself), and entertains a fine reputation. In addition to Ms. Gelb co-chairing the Lackawanna County Family Law Rules Committee, Attorney Gelb was appointed by the Supreme Court of Pennsylvania to its Civil Procedural Rules Committee (2013-2019) and is presently its Vice-Chair (2020-2021) and is routinely appointed as a Divorce Master by the Family Court Judges of Lackawanna County.

In examining Husband's Exhibits 27 and 28, and Attorney Gelb's testimony, the Court finds Attorney Gelb's legal fees of $26,950.00 to be reasonable and caused to be incurred solely by reason of Wife's obdurate, vexatious, and dilatory conduct. Of course, this is just a fraction of the total legal fees charged by Ms. Gelb to Husband for this case, as discussed in the Court's Memorandum Opinion Re: Equitable Distribution and Alimony, attached hereto as Exhibit A.

14.

As of the June 3, 2021 equitable distribution hearing, Attorney Gelb testified that the total fees, as of that date, were $50,000.00 to $60,000.00.

As ruled in <u>Verholek v. Verholek</u>, 741 A.2d 792, 799 (Pa. Super. 1999), a divorce case, as is the case at bar, the Superior Court stated:

> An award of $33,142.00 in counsel fees was based on Husband's actions obstructed the timely and orderly prosecution of Wife's claim for equitable distribution. Id. at 18-19. The Master determined that the amount of the award was "clearly appropriate" because that amount represented the expenses directly incurred by Wife relating to Husband's attempt to obstruct the prosecution of Wife's claim for equitable distribution.
>
> After a review of the record, we concluded that the trial court had a sufficient basis for determining that Husband's conduct was obdurate, dilatory, or vexatious.[6] Therefore, we concluded that the trial court did not abuse its discretion in awarding Wife's attorney's fees for Husband's conduct during the pendency of this case.

<u>Verholek</u>, 741 A.2d at 799 (Pa. Super. 1999.

The above-quoted language in <u>Verholek</u>, supra, has a familiar ring to it, except Wife's misconduct in the case at bar appears more egregious then the misconduct in <u>Verholek</u>.

BY THE COURT:

_____
EMANUEL A. BERTIN, S.J.
Appointed Visiting Judge

CC: Please note that written notice of the foregoing Order has been provided to each party pursuant to Pa.R.Civ.P. 236 (a)(2)

Johanna Gelb, Esq. *via email*
Cynthia Pollick, *pro se* *via email and mail*

---

[6] The Master found that Husband, in conjunction with the officers of Cattron, obstructed the timely and orderly prosecution of Wife's claim of equitable distribution by attempting to block Wife's access to Cattron's financial statements. Master's Report, 8/23/96 at 7, 18.

15.